**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Peter Simeon,<br>Individually, and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>          -v-<br><br>Domino's Pizza, LLC,<br><br>                              Defendant. | **Civ. Action #: 17-CV-5550 (RJD)(ST)**<br><br>**Plaintiff's Opposing Memorandum of Law** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

ABDUL HASSAN LAW GROUP, PLLC
By: Abdul K. Hassan, Esq.
*Counsel for Plaintiff*
215-28 Hillside Avenue,
Queens Village, NY 11427
Tel: 718-740-1000

SERVED ON JUNE 25, 2018

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT .......................................................................... 1

II.   ARGUMENT ................................................................................................... 3

   1.   LEGAL STANDARD .................................................................................. 3

   2.   ARBITRATION CANNOT BE COMPELLED UNDER THE FAA ............................... 4

      (A)    DEFENDANT FAILED TO MAKE THE REQUIRED SHOWING OF
      INTERSTATE COMMERCE .......................................................................... 4

      (B)    IN ANY EVENT, PLAINTIFF WOULD BE SUBJECT TO THE EXCLUSION FOR
      TRANSPORTATION/DELIVERY WORKERS IN SECTION 1 OF THE FAA ................ 6

   3.   ARBITRATION CANNOT BE COMPELLED UNDER NEW YORK LAW ................. 8

      (A)    THE PARTIES AGREED TO APPLY THE FAA "EXCLUSIVELY" –
      DEFENDANT DID NOT MOVE TO COMPEL ARBITRATION UNDER      NEW
      YORK LAW ............................................................................................ 8

      (B)    THE CLASS ACTION WAIVER IS INVALID UNDER NEW YORK LAW AND
      THE ARBITRATION AGREEMENT BY ITS OWN TERMS IS INVALID IF THE
      CLASS ACTION WAIVER IS INVALID .......................................................... 9

      (C)    MANDATORY ARBITRATION PROVISIONS, LIKE WE PURPORTEDLY
      HAVE IN THIS CASE, VIOLATE NYLL § 215 – THIS ISSUE HAS EVEN
      ATTRACTED ACTION FROM NEW YORK'S SENATOR GILLIBRAND AND
      GOVERNOR CUOMO IN RESPONSE TO THE UNPRECEDENTED "METOO"
      MOVEMENT SWEEPING THE NATION ........................................................ 12

III.  CONCLUSION ............................................................................................ 18

i

# TABLE OF AUTHORITIES

## Cases

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
   513 U.S. 265, 276–77 (1995)..............................................................................2, 4, 5

*Bernhardt v. Polygraphic Co. of America, Inc.*,
   350 U.S. 198 (1956)............................................................................................2, 4, 5

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015),.....................................................................................15

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)......................................................................................................7

*Diaz v. Michigan Logistics Inc.*,
   167 F.Supp.3d 375, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016) ...........................2, 7

*Epic Sys. Corp. v. Lewis*,
   No. 16-285, 2018 WL 2292444 (U.S. May 21, 2018) ...................................... 3, 8, 10

*Gold v. New York Life Ins. Co.*,
   153 A.D.3d 216, 232, 59 N.Y.S.3d 316, 327 (N.Y. App. Div.) ...............................10

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
   No. 16-658, 2017 WL 5160782, at 3 (U.S. Nov. 8, 2017).......................................14

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163, 169 (2d Cir. 2004)................................................................................3

*KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*,
   184 F.3d 42, 49 (1st Cir. 1999)...................................................................................5

*Lambert v. Genesee Hosp.*,
   10 F.3d 46 (2d Cir. 1993) ..........................................................................................14

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220, 229 (2d Cir. 2016)................................................................................4

*NLRB. v. LIAAC*,
   870 F.3d 82, 89 (2d Cir. 2017)..................................................................................13

*Oliveira v. New Prime, Inc.*,
   857 F.3d 7 (1st Cir. 2017), cert. granted, 138 S. Ct. 1164 (2018) .........................2, 7

*Red Hook Cold Storage Co. v. Department of Labor,*
    295 N.Y. 1, 7 (1945) ................................................................ 12

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,*
    687 F.Supp.2d 381, 387 (S.D.N.Y., Feb. 1, 2010) ................................. 6

*Reyes v. HIP at Murray Street, LLC, et al,*
    15-cv-00238, ECF No. 60 (LGS) ................................................... 13

*Schreiber v. K-Sea Transp. Corp.,*
    9 N.Y.3d 331 (2007) ................................................................ 10

*Settlement Home Care, Inc. v. Industrial Bd. of Appeals of Dept. of Labor,*
    151 A.D.2d 580, 581, 542 N.Y.S.2d 346, 347 (2d Dep't 1989) ................. 11

*Simeon v. Domino's Pizza LLC,*
    2d Cir Case No. 18-1520 .......................................................... 1

*Thallapaka v. Sheridan Hotel Assocs. LLC,*
    No. 2015 WL 5148867, at 1 (S.D.N.Y. Aug. 17, 2015) ........................ 15

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,*
    489 U.S. 468 (1989) .............................................................. 3, 9

**Statutes**

28 U.S.C. § 1453(c) ..................................................................... 1

29 U.S.C. § 215(3) ...................................................................... 14

9 U.S.C. § 2 ............................................................................. 4

9 U.S.C. § 1 .......................................................................... 1, 6, 7

9 U.S.C. § 16 ........................................................................... 1

9 USC § 4 ............................................................................. 4, 6

NYLL § 191(1)(A)(i) .................................................................... 1

NYLL § 193 ............................................................................. 1

NYLL § 215 ........................................................................ passim

NYLL § 215(1)(a) ................................................................... 13, 17

NYLL § 703 ........................................................................................................................ 11

NYLL § 195 .......................................................................................................................... 1

NYLL § 198 ..................................................................................................................... 1, 10

NYLL § 663 ........................................................................................................................ 13

**Regulation**

12 NYCRR § 142-2.8 ......................................................................................................... 12

## I.    PRELIMINARY STATEMENT

Plaintiff Peter Simeon ("Plaintiff" or "Simeon"), respectfully submits the instant memorandum of law in opposition to the motion of Defendant Domino's Pizza LLC ("Defendant"), to compel arbitration of Plaintiff's wage claims under the Federal Arbitration Act ("FAA") - 9 USC § 16.

By way of background, Defendant is a well-known pizza chain that employed Plaintiff for about 11 months as a pizza delivery person in Brooklyn, New York. (ECF No. 1-1, Ex. A ¶ 12; Def. Ex. A[1]). The claims are more fully set forth in the complaint filed on August 30, 2017. (ECF No. 1-1). In essence, however, Plaintiff brings claims for liquidated damages on all wages paid later than weekly in violation of New York Labor Law ("NYLL") § 191(1)(A)(i), on behalf of himself and other similarly-situated class members. Also, Plaintiff brings another class claim to recover unlawful wage deductions pursuant to NYLL including NYLL § 193. In addition, Plaintiff brings an individual claim to recover penalties for wage notice and wage statement violations pursuant to NYLL §§ 195, 198. All claims are based solely on New York Labor Law ("NYLL") – not federal law. Defendant removed this purely state law case on September 21, 2017, purportedly pursuant to the federal Class Action Fairness Act ("CAFA"). On January 31, 2018, Plaintiff filed a motion to remand this case to state court where it was originally filed. (ECF Nos. 16-19). On May 10, 2018, this Court denied Plaintiff's motion to remand. (ECF No. 26).  On May 20, 2018, Plaintiff filed a motion under CAFA's expedited appeal provision (28 USC § 1453(c)), with the Second Circuit for permission for leave to appeal this Court's denial of Plaintiff's motion to remand. See *Simeon v. Domino's Pizza LLC*, 2d Cir Case No. 18-1520.

---

[1] The Exhibits referenced herein are attached to the declaration of Defendant's counsel Joseph Piesco, Esq. ("Piesco Decl.").

On May 25, 2018, Defendant made a motion to compel arbitration under the Federal Arbitration Act ("FAA"), on an individual basis and not as a class action. (ECF No. 27).

At the outset, contrary to Defendant's repeated and erroneous representation, Plaintiff never agreed that the arbitration agreement in this case is valid and enforceable. Plaintiff only agreed that the class action waiver provision was enforceable under federal law in this Court – while also making it clear, especially in the motion to remand, that such a waiver would be unlawful in New York courts under New York law. Throughout this case, we have made clear that there are many grounds for defeating a motion to compel arbitration.

First, Defendant failed to show that Plaintiff "while performing his duties under the employment contract [as a pizza delivery man in Brooklyn, New York] was working 'in' commerce, was producing goods for commerce, or *was engaging in activity that affected commerce*." *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 276–77 (1995), quoting *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198 (1956). In fact, Defendant only addressed this critical interstate requirement in a footnote, and in conclusory fashion.

Second, even of we accept Defendant's conclusory statement that Plaintiff's duties 'plainly evidences "commerce" among the several states for purposes of the FAA,' (Def Memo. Pg. 5, fn 3), and that Plaintiff was therefore involved and engaged in interstate commerce, this Court would still not be able to compel arbitration under the FAA because of the exclusion in Section 1 of the FAA for transportation/delivery workers like Plaintiff.  See *Diaz v. Michigan Logistics Inc.*, 167 F.Supp.3d 375, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016); *Oliveira v. New Prime, Inc.*, 857 F.3d 7 (1st Cir. 2017), cert. granted, 138 S. Ct. 1164 (2018).

Third, because the parties agreed for the FAA to "exclusively" govern the arbitration issue, the Court is bound by the parties' agreement and cannot resort to New York Law in order

to compel arbitration. The role of the Court is to enforce the lawful provisions agreed to by the parties, even if doing so results in no arbitration – the Court is not allowed to rewrite the agreement. See *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989); *Epic Sys. Corp. v. Lewis, No.* 16-285, 2018 WL 2292444 (U.S. May 21, 2018).

Fourth, even if New York arbitration law can be applied, the motion to compel must be denied because the class action waiver is invalid under New York Labor Law ("NYLL"), and the New York State Labor Relations Act ("NYSLRA"), even though such class action waivers are valid under federal law, as further explained below. Notably, by its very terms, the entire arbitration agreement is null and void if the class action waiver is found to be invalid. (Piesco Decl., Ex B, pg. 4 ¶ 4).

Fifth, the arbitration agreement was mandatory and was a required term and condition of Plaintiff's employment. As such, the purported arbitration agreement violates NYLL § 215 which prohibits an employer from conditioning employment on the waiver of protected activity such as filing a wage claim in court or opposing arbitration because of the good faith belief that arbitration and associated costs may result in the forfeiture, waiver and abandonment of wage claims.

## II.     ARGUMENT

### 1.  LEGAL STANDARD

In *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004), the Second Circuit set forth the inquiries a court must conduct in determining whether arbitration should be compelled in a case under the Federal Arbitration Act ("FAA"), and stated in relevant part as follows:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be

3

nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

In *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), the Second Circuit stated that, 'in deciding motions to compel, courts apply a "standard similar to that applicable for a motion for summary judgment." The Court must draw all reasonable inferences in favor of the non-moving party. Courts rarely grant summary judgment at the pre-answer stage before discovery is complete, especially as to fact-intensive issues such as whether Plaintiff's duties involved or engaged interstate commerce. Here, Defendant has failed to meet its prima facie burden of proving such requirements as interstate commerce and its motion to compel should be denied at step one of the analysis as a result. In any event, Plaintiff hereby requests a jury trial as to any issues/material issues of fact – including under the FAA at 9 USC § 4.

## 2. ARBITRATION CANNOT BE COMPELLED UNDER THE FAA

### (A) DEFENDANT FAILED TO MAKE THE REQUIRED SHOWING OF INTERSTATE COMMERCE

For the Federal Arbitration Act ("FAA") to apply even in the first instance in this case, Defendant is required to prove that Plaintiff's work and employment duties were "involving [interstate] commerce" See 9 U.S. Code § 2. Defendant relies on *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 276–77 (1995), in which the Supreme Court stated in relevant part as follows:

> The Gwins and Dobsons, with far better reason, point to a different case, *Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). In that case, Bernhardt, a New York resident, had entered into an employment contract (containing an arbitration clause) in New York with Polygraphic, a New York corporation. But, Bernhardt "was to perform" that contract after he "later became a resident of Vermont." *Id.,* at 199, 76 S.Ct., at 274. This Court was faced with the question whether, in light of *Erie,* a federal court should apply the Federal Arbitration Act in a diversity case when faced with state law hostile to arbitration. 350 U.S., at 200, 76 S.Ct., at 274-75. The Court did not reach that question, however, for it decided that the contract itself did not

4

"involv[e]" interstate commerce and therefore fell outside the Act. *Id.,* at 200-202, 76 S.Ct., at 274-276. Since Congress, constitutionally speaking, *could* have applied the Act to Bernhardt's contract, say the parties, how then can we say that the Act's word "involving" reaches as far as the Commerce Clause itself? The best response to this argument is to point to the way in which the Court reasoned in *Bernhardt,* and to what the Court said. It said that the *reason* the Act did not apply to Bernhardt's contract was that there was

> "*no showing that petitioner* while performing his duties under the employment contract was working 'in' commerce, was producing goods for commerce, or *was engaging in activity that affected commerce,* within the meaning of our decisions." *Id.,* at 200-201, 76 S.Ct., at 274-275 (emphasis added) (footnote omitted).

Similarly, in this case, there is "*no showing* that [Plaintiff] while performing his duties under the employment contract, [as a pizza delivery man in Brooklyn, New York] was working 'in' commerce, was producing goods for commerce, or *was engaging in activity that affected commerce."* Unfortunately, Defendant chose to address this important threshold issue only in a footnote and in conclusory fashion as follows (Def. Memo, pg 5, fn 3):

> The term "commerce" is to be broadly construed. Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395, 401-02 (1967). In fact, the Supreme Court has held that the FAA extends to the full reach of the Commerce Clause. See Allied-Bruce Terminix Cos., 513 U.S. at 273-74. The Arbitration Agreement was entered into between Plaintiff, a resident of New York, and Domino's, a Michigan LLC with its principal place of business in Michigan. A relationship between diverse parties such as this plainly evidences "commerce" among the several states for purposes of the FAA. See (franchise agreements between Massachusetts franchisee and Illinois franchisor "implicate interstate commerce, thus subjecting them to the reach of the FAA").

Contrary to Defendant's footnote, a conclusory statement devoid of interstate facts about "a relationship between diverse parties," is insufficient to satisfy the FAA's threshold interstate requirement, as the Supreme Court found in *Bernhardt*, as reaffirmed in *Allied-Bruce*. The only case cited by Defendant on this issue - *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999), is a non-binding one involving commercial

actors in a franchisor/franchisee relationship – not an employment relationship as in this case and in *Bernhardt* where the focus is on the duties of the employee.

Defendant's failure to meet its burden of proving the interstate requirement is fatal to its motion to compel arbitration under the FAA. See *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F.Supp.2d 381, 387 (S.D.N.Y., Feb. 1, 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."). At minimum, whether Plaintiff was involved or engaged in interstate commerce is a question of fact for the jury which requires additional discovery as well – especially at this pre-answer stage of the case. Plaintiff respectfully requests a jury trial including under the FAA at 9 USC § 4, as to all such issues of fact.

### (B) IN ANY EVENT, PLAINTIFF WOULD BE SUBJECT TO THE EXCLUSION FOR TRANSPORTATION/DELIVERY WORKERS IN SECTION 1 OF THE FAA

Even if Plaintiff's duties "plainly evidences "commerce" among the several states for purposes of the FAA," (Def. Memo. Pg 5, fn 3), and Plaintiff was engaged in interstate commerce as a result, arbitration still cannot be compelled in this case under the FAA because of the exclusion in Section 1 of the FAA for transportation/delivery workers like Plaintiff. (9 U.S.C. § 1).

The arbitration agreement here states in relevant as follows (Piesco Decl. Ex. B ¶ 1):

> Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and Employee, both the Company and Employee agree that any claim, dispute, and/or controversy that the Employee or the Company may have against the other shall be submitted to and determined ***exclusively*** by binding arbitration under the ***Federal Arbitration Act, 9 U.S.C. Sections 1-16***.

6

However, if the FAA governs, arbitration cannot be compelled in this case under the FAA because Section 1 of the FAA specifically excludes transportation/delivery workers like Plaintiff and states in relevant part as follows (9 U.S.C.A. § 1):

> nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

See also *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001) (holding that § 1 "exempts from the FAA only contracts of employment of transportation workers."). In *Diaz v. Michigan Logistics Inc.*, -F.Supp.3d-, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016), the Court found that it could not compel arbitration under the FAA because of the exclusion in Section 1 of the FAA. Noting the difficulty of resolving the fact-intensive inquiry as to whether plaintiffs were independent contractors or employees, the court in *Diaz* concluded that it could not compel arbitration under the FAA in light of the Section 1 exclusion. This case is a lot more compelling in Plaintiff's favor because unlike the plaintiffs in *Diaz*, the Plaintiff here was undisputedly an employee of Defendant and not an independent contractor.

In *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 15 (1st Cir. 2017), cert. granted, 138 S. Ct. 1164, 200 L. Ed. 2d 313 (2018), the First Circuit held that the federal courts lacked authority to compel arbitration under the FAA because of the exclusion in Section 1 of the FAA and stated in relevant part as follows:

> When the only basis for seeking arbitration in federal court is the FAA, the district court can grant the requested relief only if it has authority to act under the FAA. See id. at 843. If the FAA does not apply, "private contracting parties cannot, through the insertion of a delegation clause, confer authority upon a district court [i.e., to compel arbitration under the FAA] that Congress chose to withhold." Id. at 844. Therefore, "the district court must make an antecedent determination that a contract is arbitrable under Section 1 of the FAA before ordering arbitration pursuant to Section 4." Id. at 843.

7

Here, the arbitration agreement sets forth that disputes shall be "determined *exclusively* by binding arbitration under the Federal Arbitration Act, 9 U.S.C. Sections 1-16," and as such, Defendant moved to compel arbitration only under the FAA and not under any other law, such as New York law. Even more compelling here than in *Oliveria*, Plaintiff in this case was undisputedly an employee of Defendant – thus eliminating any need for fact-intensive independent contractor analysis.

### 3.   ARBITRATION CANNOT BE COMPELLED UNDER NEW YORK LAW

### (A) THE PARTIES AGREED TO APPLY THE FAA "EXCLUSIVELY" – DEFENDANT DID NOT MOVE TO COMPEL ARBITRATION UNDER NEW YORK LAW

While the Court in *Diaz* relied on New York arbitration law as an alternative ground for compelling arbitration in that case, such an approach is legally erroneous for several reasons. See also, *Oliveira*, 857 F.3d 7, 18–19 ("Indeed, there is an observable phenomenon in our courts of appeal and elsewhere—sometimes called 'herding' or 'cascading'—where decisionmakers who first encounter a particular issue (i.e., the first court to consider a question) are more likely to rely on the record presented to them and their own reasoning, while later courts are increasingly more likely to simply go along with the developing group consensus.").

First, the U.S. Supreme Court in *Epic Sys. Corp.*, 2018 WL 2292444, at 5, held more than ever before, that arbitration agreements should be enforced according to their lawful terms, and stated in relevant part as follows:

> Indeed, we have often observed that the Arbitration Act requires courts "rigorously" to "enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted."

Here, the parties agreed that disputes shall be "determined *exclusively* by binding arbitration under the Federal Arbitration Act, 9 U.S.C. Sections 1-16." (Piesco Decl. Ex. B, pg. 3

¶ 1). The role of the court is to enforce the lawful agreement of the parties even if doing so results in no arbitration. In *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989), the parties agreed that the arbitration "Contract shall be governed by the law of the place where the Project is located." *Volt*, 489 U.S. at 470. Like the FAA's Section 1 exclusion in this case, there was a California state law provision in *Volt* that prevented the arbitration from going forward. The defendants in *Volt* wanted to resort to another body of law (FAA), in order to proceed with arbitration. The Supreme Court held that the parties were bound by the arbitration choice of law provision in the agreement even if that meant they could not proceed with arbitration. The Supreme Court in *Volt* reaffirmed that the role of the court was to enforce the agreement to arbitrate and not to rewrite the agreement to have the case arbitrated. Here, because the parties specifically agreed to be governed by the FAA – including the Section 1 exclusion and the interstate commerce requirement in Section 2, and not by another law such as New York law, this Courts lacks authority to compel arbitration under New York law which the parties did not choose or agree to – this is even more so under *Epic Sys. Corp.* which more than ever before prohibits the court from deviating from the parties' lawful agreement especially when there is no law requiring such a deviation.

### (B) THE CLASS ACTION WAIVER IS INVALID UNDER NEW YORK LAW AND THE ARBITRATION AGREEMENT BY ITS OWN TERMS IS INVALID IF THE CLASS ACTION WAIVER IS INVALID

Even if NY arbitration law can be applied, arbitration cannot be compelled because class waivers are invalid under New York law, and because the arbitration agreement in this case, is invalid by its own terms, in the event the class waiver is invalidated. In this regard the arbitration agreement in this case states in relevant part as follows (Piesco Decl., Ex B, pg. 4 ¶ 4):

>…if the "Form of Arbitration" provision above prohibiting classwide, collective action, consolidated, or other group arbitration is deemed invalid, then this entire Arbitration Agreement shall be null and void.

In a narrow and split 5-4 decision, the U.S. Supreme Court in *Epic Sys. Corp. v. Lewis, No.* 16-285, 2018 WL 2292444 (U.S. May 21, 2018), held that class action waivers are valid under federal law. However, such class action waivers are invalid under New York Law for several compelling reasons.  First, NYLL §§ 198 and 663 gives the Plaintiff the right to bring an action in court – NYLL does not limit such an action to an individual action, and in fact, class actions under NYLL are very common. The right to bring an action, whether an individual or class action, is a substantive one and cannot be vindicated unless the arbitration class action waiver is unenforceable. In *Gold v. New York Life Ins. Co.*, 153 A.D.3d 216, 232, 59 N.Y.S.3d 316, 327 (N.Y. App. Div.), judgment entered, 62 N.Y.S.3d 260 (N.Y. App. Div. 2017), the NY Appellate Division, rejected the dissenting view in *Gold* that '"the right to bring a collective action on behalf of others" is a "litigation mechanism," and therefore a mere procedural right.' While the First Department's holding in *Gold* may no longer be valid as to federal law, it is still valid as to New York law. Additionally, class waivers violate NYLL § 215, by conditioning employment on waiver of protected activity – such as 1) filing a case in court; and 2) acting in concert under NYLL – as opposed to federal law. It is well settled that an arbitration agreement that prevents the effective vindication of substantive statutory rights – directly or indirectly, is unenforceable. *Schreiber v. K-Sea Transp. Corp.*, 9 N.Y.3d 331 (2007) (allowing arbitration of statutory claims only if "agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute …"). Waiver of a substantive right, obviously and totally, prevents vindication of that right.

Second, the class action waiver in this case violates the New York Labor Relations Act ("NYLRA"), which grants Plaintiff and putative class members the substantive right to engage in concerted activities such as class action litigation. In this regard, the NYLRA at NYLL § 703 reads in relevant part as follows:

> Employees shall have the right of self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion of employers, but nothing contained in this article shall be interpreted to prohibit employees from exercising the right to confer with their employer at any time, provided that during such conference there is no attempt by the employer, directly or indirectly, to interfere with, restrain or coerce employees in the exercise of the rights guaranteed by this section.

In *Gold*, the First Department held that "concerted activities," include class actions and that class action waivers were invalid because they violate the substantive right of employees to engage in concerted activity in the form of class actions. Even though the First Department in *Gold* was interpreting the federal National Labor Relations Act ("NLRA"), the right to engage in concerted activity under the NLRA and the NYSLRA is in essence the same. Moreover, although *Gold* may no longer be binding with respect to the federal NLRA/FLSA in light of the Supreme Court's decision in *Epic Systems*, the holding and reasoning in *Gold* is still good law with respect to the NYLRA and NYLL – the duty to interpret New York law belongs to New York courts.

Third, the class action waiver in this case violate the remedial purpose and strong public policy behind the New York Labor Law. The wage laws are remedial legislation and are to be "liberally construed so as to permit as many individuals as possible to take advantage of the benefits it offers." *Settlement Home Care, Inc. v. Industrial Bd. of Appeals of Dept. of Labor*, 151 A.D.2d 580, 581, 542 N.Y.S.2d 346, 347 (2d Dep't 1989). Class action waivers do the opposite – it forces as few people as possible to take advantage of the NYLL. *See also Red Hook*

11

*Cold Storage Co. v. Department of Labor*, 295 N.Y. 1, 7 (1945) (NY Court of Appeals ruling

that labor law should be interpreted "liberally" to provide protections broadly.). See also 12

NYCRR § 142-2.8 (New York's posting requirement - intended to effect broad knowledge and

action by as many employees as possible to vindicate their wage rights.).  NYLL § 215

(Protecting the rights of employees to participate in proceedings under or related to the NYLL

such as this proceeding.).

In addition, one of the most powerful reasons why class action waivers are contrary to the

public policy and purpose of the NYLL, is the recognition by the dissent in *Epic Systems* and the

majority in *Gold*, that denying the right to act in concert such as in a class action, would seriously

undermine the labor laws by making it too costly for employees to bring claims where the costs

of doing so may be too high in relation to the claim – and especially where the offending

employer is much more powerful and better resourced – strength in numbers for low wage

workers like Plaintiff. Once again, the Supreme Court's decision in *Epic System*, does not control

the arguments here based on NYLL – it is the authority and duty of New York's courts to

interpret NYLL.


**(C) MANDATORY ARBITRATION PROVISIONS, LIKE WE PURPORTEDLY HAVE IN THIS CASE, VIOLATE NYLL § 215 – THIS ISSUE HAS EVEN ATTRACTED ACTION FROM NEW YORK'S SENATOR GILLIBRAND AND GOVERNOR CUOMO IN RESPONSE TO THE UNPRECEDENTED "METOO" MOVEMENT SWEEPING THE NATION**

In this case, Plaintiff was required to sign a purported mandatory arbitration provision as

a condition of his employment or continued employment with Defendant, which reads in relevant

part as follows (Def. Ex. B, pg. 1 ¶ 4):

12

> Enclosed is the Arbitration Agreement which, after you carefully review, you **must sign in order to commence or continue your employment**.

In other words, if Plaintiff did not waive his NYLL right to bring his NYLL claims in a judicial forum (NYLL §§ 198, 663) – a protected activity under NYLL § 215(1)(a), Defendant would have subjected Plaintiff to a drastic adverse employment action in the form of denial or termination of employment. Such a requirement, provision or policy is not only in strong tension with the remedial purpose of the NYLL, it also violates NYLL § 215(1)(a). See also, *Reyes v. HIP at Murray Street, LLC*, *et al*, 15-cv-00238, ECF No. 60 (LGS) (invalidating a "provision prohibiting Plaintiffs from obtaining future employment from Defendants," because it was in "'strong tension with the remedial purposes" of the FLSA.).

The NYLL § 215(1)(a), specifically protects the right to bring a court case without suffering an adverse employment action such as termination or denial of employment. However, that is precisely the situation here where employment would be denied or terminated if the employee does not waive the right to bring a case in court.

In endorsing a pre-dispute mandatory arbitration provision where employment is conditioned on waiver of FLSA or NYLL rights, the Court would be endorsing agreements, policies and practices that violate the FLSA and NYLL. See *NLRB. v. LIAAC*, 870 F.3d 82, 89 (2d Cir. 2017) ("The contrary rule urged by LIAAC, that an employee can be required to comply with an unlawful policy and the employee is only protected from the unlawful policy if he or she actively organizes with other employees against it, is illogical and untenable.").

The issue of whether mandatory arbitration provisions like the one in this case violates NYLL § 215(1)(a) is one of first impression and of great public importance. This is a very compelling argument but remarkably it appears that it has never been addressed in any other case, one way or the other. We recognize the conundrum that courts find themselves in – on the

13

one hand, there are rulings enforcing mandatory arbitration agreements, but on the other hand, none of them address the powerful argument as to whether such agreements violate NYLL § 215 and would be invalid as a result. However, the Supreme Court has recently taught us that we should not compound the problem by continuing the oversight and not addressing the argument. In *Hamer v. Neighborhood Hous. Servs. of Chicago*, No. 16-658, 2017 WL 5160782, at 3 (U.S. Nov. 8, 2017) ('The "mandatory and jurisdictional" formulation is a characterization left over from days when we were "less than meticulous" in our use of the term "jurisdictional."').

Even though it does seem odd that such a compelling argument has never been addressed by the courts one way or the other, there may be some explanation for this gap in the jurisprudence that this Court should now fill. First, the trend towards arbitration in employment cases, in essence, began relatively recently in the late 1980s – the FAA was enacted as far back as 1925. Second, in *Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir. 1993), the Second Circuit took a very narrow view of the FLSA's anti-retaliation/anti-discrimination provision at 29 USC 215(3), until very recently, when it reversed *Lambert*, in *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).

Second, the current version of NYLL § 215 that governs in this case, is only a few years old, and is much broader than the older version. For example, courts interpreted the earlier versions of NYLL § 215 as requiring an employee to cite in a complaint or opposition, a specific section of the labor law that was violated. The current version of the law explicitly overruled those earlier decisions holding as such, by stating that, "An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section." The current version of the law also protects good faith conduct even if no violation of the labor law is ultimately established. Here, Defendant is asking

14

this Court to enforce a policy that allows it to deny employment or terminate an employee who opposes or refuses in good faith, to waive her rights under NYLL to a judicial forum and who has a good faith belief that waiving such a right will also result in the improper waiver of wages under the NYLL – because of the high costs of arbitration, financial and otherwise. Such policies and agreements as we have in this case violate NYLL § 215(1)(a) and cannot be endorsed or enforced by this Court.

The "Metoo" movement sweeping the nation, the public's outrage at the use of arbitration to perpetuate sexual harassment and other workplace violations and to silence victims, as well as the public's great interest in this issue, establish a compelling need for this Court to embrace Plaintiff's arguments – the sexual harassment and gender discrimination laws have provisions similar to NYLL § 215(1)(a) – wage theft and other wage violations can be just as bad and even worse for many women and men who have to pay the bills each month. Here, the change has been dramatic, swift, and widespread. As the media investigates and reports on the almost daily scandals, the public is finding out, to their dismay and outrage, that horrific sexual harassment and even assault and rape, went on for decades because of arbitration and confidentiality agreements that denied victims an affordable forum for their claims, and forced them into silence. Fortunately, courts, especially in the Second Circuit, do not permit confidentiality in wage cases and agreements – highlighting the uniquely protective nature of wage laws. See i.e. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 2015 WL 5148867, at 1 (S.D.N.Y. Aug. 17, 2015) ("Indeed, the overwhelming majority of courts reject the proposition that FLSA settlement agreements can be confidential.").

In response to the "Metoo" movement, Chief Justice Roberts has rightly instructed the federal judiciary to reexamine procedures for handling workplace complaints. Congress is doing the same with respect to its procedures. In the private sector, numerous powerful executives have been fired in rapid succession and significant changes have occurred. For example, Microsoft corporation has announced that it will no longer enforce mandatory arbitration agreements in certain employment cases - "The move comes amid a growing outcry to eliminate forced arbitration agreements, which waive the right to sue or take part in class action lawsuits.[2]" Also, USA TODAY noted that, "The role that forced arbitration plays in silencing women has become a hotly debated topic with the national #MeToo outcry over sexual harassment.[2]"

Also, New York Senator Kirsten Gillibrand has joined other lawmakers in Congress in introducing a bill to limit the use of pre-dispute mandatory arbitration provisions. On December 6, 2017, the Washington Times covered the proposed new legislation and stated in relevant part as follows[3]:

> "When they were hired, they filled out paperwork … that took away their right to sue," Ms. Bustos said. "They were forced into a secret arbitration process and that meant their stories would never see the light of day."
>
> …Sen. Lindsey Graham, South Carolina Republican, said people in business want arbitration agreements because it is good for them. He called on the U.S. Chamber of Commerce to support the bill.
>
> "I'm asking the business community — for your own sake, if nothing else — help us lead America to a better business environment and a better business environment is to be able to go to work and without having to put up with a bunch of crap," Mr. Graham said.

---

[2] http://money.cnn.com/2017/12/19/technology/microsoft-ends-forced-arbitration/index.html [2] https://www.usatoday.com/story/money/2017/12/06/bipartisan-bill-would-eliminate-forcedarbitration-break-silence-sexual-harassment-cases/925226001/

[3] https://m.washingtontimes.com/news/2017/dec/6/bill-end-forced-arbitration-sexual-harassment/

"Forced arbitration is the harasser's best friend. It keeps harassment complaints and settlements secret. It allows harassers to stay in their jobs even as victims are pushed out or, many times, fired," said Ms. Carlson.

Sen. Kirsten Gillibrand, New York Democrat, is backing the bill. She acknowledged that sexual harassment is a problem not only in Hollywood and the military, but also in politics.

Closer to home, New York's Governor Andrew Cuomo, is making significant attempts to limit the use of mandatory arbitration agreements. His efforts were covered in New York Law Journal on January 3, 2018, and read in relevant part as follows[4]:

Amid the national movement to uncover sexual harassment in various sectors, New York Gov. Andrew Cuomo on Tuesday said he plans to introduce state legislation to prohibit confidentiality agreements related to sexual harassment claims in government and to void forced arbitration policies in employee contracts.

The wide-ranging proposals by the Democratic governor are part of his legislative agenda, which he is set to unveil on Wednesday, and appear to be in response to the #MeToo movement spurred by sexual harassment and assault allegations levied against movie producer Harvey Weinstein in October and numerous other powerful public figures in Hollywood, government and the media since then, by women and men.

One can easily conclude that the politicians are scrambling to act on the problem of predispute mandatory arbitration provisions because the courts have failed to act and have not addressed the argument that mandatory arbitration violates the anti-retaliation and antidiscrimination provisions of several employment laws including NYLL § 215(1)(a). There are probably very few current issues of greater importance and public interest than the issue of mandatory pre-dispute arbitration.

---

[4]

https://www.law.com/newyorklawjournal/sites/newyorklawjournal/2018/01/02/governorproposes-sexual-harassment-agenda-details-scarce/

### III.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Honorable Court: 1) deny

Defendant's motion to compel arbitration in its entirety and with prejudice; and 2) grant Plaintiff

such other, further and different relief in Plaintiff's favor as this Court deems just and proper.

Dated: Queens Village, New York
        June 25, 2018

Respectfully submitted,

Abdul Hassan Law Group, PLLC
    /s/ Abdul Hassan
By: Abdul K. Hassan, Esq. (AH6510)
*Counsel for Plaintiff Peter Simeon*
215-28 Hillside Avenue, Queens Village, NY 11427
Tel: 718-740-1000 - Fax: 718-740-2000
Email: abdul@abdulhassan.com